| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>Phone: 720-865-8301 | DATE FILED: August 6, 2023 8:12 PM<br>FILING ID: 2887E3C529213<br>CASE NUMBER: 2023CV32275 |
| **Plaintiff**:<br>KATHERINE KENDRICK,<br><br>v.<br><br>**Defendant:**<br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY. | ▲COURT USE ONLY▲ |
| **ATTORNEYS:**<br>Name:        Reeves D. Whalen, Reg. No. 40189<br>                    Steven G. Greenlee, Reg. No. 24577<br>Attorneys:  Plaintiff<br>Address:    Whalen Injury Lawyers, LLC<br>                    7955 E. Arapahoe Court, Ste. 2375<br>                    Centennial, Colorado, 80112<br>Phone No.: (720) 307-2666<br>Fax No.:     Declined pursuant to C.R.C.P. 5(b)<br>E-Mail:       rwhalen@whaleninjurylawyers.com<br>                    sgreenlee@whaleninjurylawyers.com | Case No.<br><br>Ctrm./Div. |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff, Katherine Kendrick, by and through her counsel of record, Whalen Injury Lawyers, LLC, and for her Complaint and Jury Demand against Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company states, alleges, and avers as follows:

## PARTIES

1. Plaintiff, Katherine Kendrick, (hereinafter "Plaintiff"), is a citizen and resident of Teller County, Colorado, residing at 740 Sunrise Circle, Woodland Park, CO 80863.

2. Defendant State Farm Mutual Automobile Insurance Company is a foreign corporation organized under the laws of Illinois and with a principal business address of 1 State Farm Plaza, Bloomington, IL 61710. Defendant State Farm Mutual Automobile Insurance

1

**EXHIBIT**

A

    Company's Registered Agent for service of legal process in the State of Colorado is the Corporation Service Company, located at 1900 W. Littleton Boulevard, Littleton, CO 80120.

3. Defendant State Farm Fire and Casualty Company is a foreign corporation organized under the laws of Illinois and with a principal business address of 1 State Farm Plaza, Bloomington, IL 61710. Defendant State Farm Fire and Casualty Company's Registered Agent for service of legal process in the State of Colorado is the Corporation Service Company, located at 1900 W. Littleton Boulevard, Littleton, CO 80120.

4. Defendant State Farm Mutual Automobile Insurance Company and Defendant State Farm Fire and Casualty Company are collectively referred to herein as "State Farm".

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to the Constitution of the State of Colorado, Article VI, Section 9.

6. This Court has personal jurisdiction over State Farm by virtue of their operations and presence in Colorado, by their commission of tortious acts which caused injuries and damages in Colorado, by their transacting business in or directed at Colorado, and/or by otherwise purposefully availing themselves of the benefits and protections of Colorado law through regular, continuous, and systematic contacts with Colorado.

7. Venue is proper in this Court pursuant to C.R.C.P. 98(c)(1) because State Farm, as non-residents of this state, can be found in Denver County; and because Denver is the county designated in this Complaint.

## GENERAL ALLEGATIONS

8. On or about November 30, 2018, the Plaintiff was traveling eastbound on Highway 24, in El Paso County, Colorado.

9. At that time, Plaintiff stopped at the exit for 21st Street behind other stopped traffic.

10. At the same time and place, Sophia Rossi was driving eastbound on Highway 24, approaching the exit for 21st Street.

11. As Sophia Rossi approached the stopped traffic at the 21st Street exit, she was distracted and was driving at a high rate of speed.

12. Sophia Rossi did not attempt to slow or stop as she approached the stopped traffic ahead and crashed into the back of Plaintiff's stopped car.

13. The resulting collision caused damage to Plaintiff's vehicle:



14. The resulting collision caused damage to Sophia Rossi's vehicle:



15. Sophia Rossi's actions, inactions, and conduct were negligent, negligent per se, and careless.

16. As a direct and proximate result of Sophia Rossi's careless and negligent actions, inactions and conduct that caused the November 30, 2018, collision, Plaintiff was injured and sustained injuries, damages, and losses.

17. At all relevant times, the vehicle driven by Sophia Rossi at the time of the subject collision was insured through a policy of liability insurance issued by Defendant State Farm Mutual Automobile Insurance Company.

18. Defendant State Farm Mutual Automobile Insurance Company's liability insurance coverage for the vehicle driven by Sophia Rossi at the time of the subject collision was in the amount of $250,000.

19. Plaintiff brought suit against Sophia Rossi on January 22, 2021.

20. Sophia Rossi's defense in that lawsuit was provided by Defendant State Farm Mutual Automobile Insurance Company.

21. In addition to incurring and disclosing during that lawsuit over $250,000 in past medical bills for her treatment arising from the collision, Plaintiff's treating physician, Dr. Vanston Masri of Colorado Interventional Health Sciences opined on March 28, 2020, that Plaintiff would reasonably require repeat bilateral three-level radiofrequency ablation treatments at L3-S1 at a frequency of once every 12 months for the remainder of her life (27 years at the time) as a result of the November 30, 2018, collision.

22. Plaintiff further disclosed during that lawsuit an expert medical pricing analyst, Mark Guilford, to establish evidence of the cost of Plaintiff's future treatment needs.

23. Plaintiff's medical pricing expert opined in his March 30, 2022, report that, based on the future treatment recommendations made by Dr. Masri, the anticipated cost of Plaintiff's recommended future medical radiofrequency ablation treatment was, at that time, $1,221,210.

24. During Plaintiff's lawsuit against Sophia Rossi, Dr. Laub, a psychologist, conducted an Independent Psychological Evaluation, and recommended once weekly individual psychotherapy for a period of at least 12-18 months.

25. During Plaintiff's lawsuit against Sophia Rossi, Defendant State Farm Mutual Automobile Insurance Company's insured, the Plaintiff testified concerning the impact the accident had on her life, further supporting non-economic damages and permanent impairment.

26. During the underlying lawsuit, after reviewing the disclosures, expert reports, and taking the Plaintiff's deposition, Defendant State Farm Mutual Automobile Insurance Company, on behalf of its insured, Sophia Rossi, did not seek any independent medical examination of Plaintiff before agreeing to pay the full BI policy limits to the Plaintiff.

27. Since that time, Plaintiff has undergone additional radiofrequency ablation treatments as recommended, which treatment has continued to provide her pain relief.

28. Plaintiff's medical treatment, including the recommended radiofrequency ablation procedures, is ongoing.

4

29. As a direct and proximate result of the November 30, 2018, collision and the serious bodily injury and trauma arising therefrom, Plaintiff has to date incurred past medical bills for treatment occurring after this accident of over $330,000.

30. Plaintiff's past medical treatment and condition have been documented by her treating physicians and medical providers.

31. The medical bills and expenses incurred by Plaintiff and claimed by her in this action were the direct and proximate result of injuries sustained in the subject collision.

32. The medical bills and expenses incurred by Plaintiff as a result of the subject collision were reasonable and necessary.

33. Plaintiff's recommendations for future medical treatment have been documented by her treating physicians and medical providers.

34. Plaintiff will continue to require the extensive future medical treatment recommended by Dr. Masri as a direct and proximate result of bodily injuries she sustained in the subject collision.

35. The future medical treatment recommended by Dr. Masri is reasonable and necessary.

36. Prior to the subject collision, Plaintiff did not have the bodily injuries she alleges she sustained in the subject collision.

37. Prior to the subject collision, Plaintiff did not have functional limitations relating to the parts of her body alleged to have been injured in the subject collision.

38. Prior to the subject collision on November 30, 2018, Plaintiff entered into contracts of insurance with State Farm and/or was an insured under the following policies of insurance with the following Underinsured Motorist ("UIM") coverage limits:

    a. State Farm Mutual Automobile Insurance Company policy number 442 9942-06 ($250,000 per person)

    b. State Farm Mutual Automobile Insurance Company policy number 096 7396-B02-06D ($250,000 per person)

    c. State Farm Fire and Casualty Company policy number 86-J3-6522-0 ($5,000,000 - Personal Liability Umbrella Policy)

    Collectively these policies are referred to herein as "the State Farm Policies."

39. At the time of the collision described herein and at all relevant times on November 30, 2018, the State Farm Policies were in full force and effect and afforded UIM coverage to Plaintiff for bodily injuries, damages, and losses.

40. State Farm confirmed by letters dated September 9, 2019, and June 3, 2022, that the State Farm Policies described above provided the stated UIM coverage and were in effect on November 30, 2018.

41. The vehicle driven by the underlying tortfeasor, Sophia Rossi, in the subject collision did not carry adequate liability insurance to fully compensate Plaintiff for the injuries, damages, and losses she sustained in the subject collision.

42. Plaintiff timely notified State Farm of the subject collision and her UIM claim under the State Farm Policies.

43. On April 26, 2022, Plaintiff formally requested that State Farm review and evaluate her bodily injury claim under her State Farm Policies and tender the UIM benefits owed under the State Farm Policies.

44. On May 9, 2022, State Farm provided Plaintiff with written consent to settle her underlying claim/lawsuit against Sophia Rossi for $250,000, the available limits of the State Farm Mutual Automobile Insurance Company liability insurance policy.

45. With State Farm's written consent, Plaintiff settled her claims against Sophia Rossi for the $250,000 policy limits on June 28, 2022.

46. Plaintiff timely presented her UIM claim under the State Farm Policies.

47. The injuries sustained by Plaintiff, for which she has requested payment of underinsured motorist insurance benefits under the State Farm Policies, were directly and proximately caused by the subject collision of November 30, 2018.

48. Based on the nature and extent of her past and future damages, Plaintiff demanded payment of UIM benefits from State Farm under the State Farm Policies.

49. Plaintiff's request for evaluation and demand for UIM benefits was a request for payment under the provisions of the UIM coverage from State Farm provided through the State Farm Policies.

50. Plaintiff's request for evaluation and demand for UIM benefits included medical records and billing invoices for past medical treatment related to the subject collision of November 30, 2018.

51. Plaintiff's request for evaluation and demand for UIM benefits included expert reports, including Dr. Laub's report/opinions and Dr. Masri's March 28, 2020, written recommendations for future medical treatment.

52. Plaintiff's request for evaluation and demand for UIM benefits included the March 30, 2022, report of medical pricing analyst, Mark Guilford, establishing the cost of Plaintiff's future treatment needs as recommended by Plaintiff's treating physician, Dr. Masri.

53. Plaintiff's request for evaluation and demand for UIM benefits included relevant medical bills and records.

54. The State Farm Policies, and specifically their UIM coverages, create an obligation on the part of Defendants to never put their interests above that of Plaintiff.

55. The State Farm Policies, and specifically their UIM coverages, create an obligation on the part of Defendants to review UIM claims submitted by their insureds in a timely and thorough fashion.

56. The State Farm Policies, and specifically their UIM coverages, create an obligation on the part of Defendants to pay reasonable and necessary past medical expenses presented by their insureds in a UIM claim.

57. The State Farm Policies, and specifically their UIM coverages, create an obligation on the part of Defendants to pay reasonable and necessary future medical expenses presented by their insureds in a UIM claim.

58. The State Farm Policies, and specifically their UIM coverages, create an obligation on the part of Defendants to pay reasonable damages for non-economic losses to their insureds in a UIM claim.

59. The State Farm Policies, and specifically their UIM coverages, create an obligation on the part of Defendants to pay reasonable damages for physical impairment to their insureds in a UIM claim.

60. The State Farm Policies, and specifically their UIM coverages, create an obligation on the part of Defendants to pay their insured's damages that are undisputed in a UIM claim.

61. Plaintiff's April 26, 2022, request for evaluation and demand for UIM benefits requested that State Farm provide a response by May 12, 2022.

62. On May 9, 2022, State Farm responded to the UIM demand, stating that

    a. the demand was the "first claim support" State Farm had received since August 21, 2019, despite State Farm Mutual Automobile Insurance Company being the same insurance company that was defending Plaintiffs' lawsuit against Sophia Rossi, and despite State Farm Mutual Automobile Insurance Company being the same insurance company that had already paid $25,000 in first party med pay benefits under Plaintiff's insurance policy based on bills submitted to State Farm;

    b. that the Plaintiff's claim had been "reassigned" to another adjusted and was "reviewed on May 9, 2022," and that the May 12, 2022, deadline was not a reasonable amount of time to respond to the content of the demand—despite receiving the documentation on April 26, 2022, two weeks earlier; and

    c. that State Farm would respond within 45 days to advise whether the evaluation was complete or not and whether additional information was needed

63. State Farm did not respond within 45 days despite saying State Farm would do so.

64. In fact, *sixty-five (65) days* after State Farm's May 9, 2022, letter and *seventy-eight (78) days* after Plaintiff submitted her UIM claim, State Farm finally communicated with Plaintiff on July 13, 2022, stating that it had "completed" the review of Plaintiff's UIM claim, and that State Farm needed more information concerning treatment by a prior chiropractor, and that after receiving those records, State Farm would obtain an independent medical exam "to assist" State Farm's investigation.

65. Plaintiff obtained the chiropractic records requested by State Farm, which consisted of a single date of service from January 2016, and also obtained a letter from the chiropractor advising that Ms. Kendrick had not ever been seen by him in 2015, and provided that information to State Farm on August 4, 2022.

66. On August 4, 2022, Plaintiff requested that State Farm provide a Fisher payment to Plaintiff as well as a detailed breakdown of State Farm's claim evaluation.

67. On August 18, 2022, State Farm responded, stating that State Farm's evaluation was independent of State Farm's evaluation of Plaintiff's damages in the udnerlying liability case against State Farm's insured, Sophia Rossi, and that State Farm's UIM evaluation was pending based on the "Independent Medical Exam (IME) State Farm advised we would be pursuing in relation to our investigation into your client's future damages claims related to lumbar treatment."

68. State Farm's August 18, 2022, letter states that no Fisher payments were owed.

69. State Farm's August 18, 2022, letter does not state that State Farm disputed causation.

70. State Farm's August 18, 2022, letter does not provide any breakdown of any component of Plaintiff's damages as to what is disputed and what is not disputed by State Farm.

71. State Farm's August 18, 2022, letter advises the IME would be directly scheduled by their IME vendor.

72. On August 18, 2022, Plaintiff requested a copy of State Farm's claim file due to State Farm's lack of transparency concerning Plaintiff's disputed and undisputed damages, requested Fisher payments given the amount of the past medical bills were greater than the underlying policy limit and becaose theo only purpose of the IME was to assess the need for future treatment.

73. Plaintiff again requested on August 18, 2022, that State Farm pay UIM benefits to Plaintiff.

74. *Three weeks later*, on September 8, 2022, State Farm's IME vendor, ExamWorks, scheduled an exam with Dr. Feldman to occur on September 17, 2022.

75. State Farm obtained an IME evaluation of Ms. Kendrick on September 17, 2022.

8

76. Thereafter, instead of paying any UIM benefits to Plaintiff, or providing Plaintiff a copy of the IME report, or providing any update on their evaluation, State Farm hired a lawyer.

77. State Farm, through their lawyer, stated in a letter of August 25, 2022, that the lawyer was hired purportedly because of the "tenor" of Plaintiff's counsel's communications with State Farm.

78. In that August 25, 2022, letter, State Farm, through their lawyer, advised that the Plaintiff's past medical expenses had not been accepted as undisputed, and thus no Fisher payment was required.

79. In that August 25, 2022, letter, State Farm, through their lawyer, provided a new reason for the IME—to address causation—which was an issue that was not identified or raised by State Farm in any prior communication; rather, State Farm's prior stated purpose of the IME was to address "future damages claims related to lumbar treatment."

80. On September 28, 2022, Plaintiff inquired about when the report for the September 17, 2022, IME would be provided to Plaintiff.

81. On September 28, 2022, State Farm's lawyer advised the ETA of the IME report was unknown, that he would check with the State Farm adjuster, but made no promise that it would be available by October 1.

82. Plaintiff finally obtained the IME report on October 12, 2022, nearly a month after the IME was completed, and nearly *6 months* after Plaintiff submitted her UIM claim to State Farm.

83. *Three months later*, on January 11, 2023, and *nearly nine months* since Plaintiff had submitted her UIM claim, State Farm advised that it had "updated its evaluation and review of all documentation submitted to date" and determined that Plaintiff had been "fully compensated by the liability carrier" (i.e., State Farm) and thus, no UIM benefits are owed to Plaintiff.

84. State Farm stated at that time that they "remained open to new information to consider."

85. Plaintiff thereafter provided new information for State Farm to consider, which was a May 13, 2023, report from Dr. Masri, and which addressed Dr. Feldman's IME report, explaining why her evaluation and opinions concerning the past and future treatment Dr. Masri was providing to Plaintiff were wrong.

86. On May 15, 2023, Plaintiff submitted to State Farm updated billing records for Ms. Kendricks' ongoing treatment and a medical billing summary, which summary totaled $337,410.97 in past bills, along with Dr. Masri's May 13, 2023, report, that provided the opinion and the basis for his opinion that Plaintiff's "symptoms and medical treatment is causally related to the motor vehicle accident on 11/30/2018. She has demonstrated the need for repeat radiofrequency ablations, and it is within a high degree of medical probability, that she will continue to repeat these."

9

87. State Farm, however, was not "open to new information to consider," because instead of actually considering Dr. Masri's opinions and evidence supporting his own patient's past and future treatment, State Farm instead requested that their IME doctor, Dr. Feldman, provide an additional report to dispute Dr. Masri's report.

88. State Farm's IME doctor, Dr. Feldman, concluded that her opinions about Ms. Kendrick did not change despite the clarity of Dr. Masri's report that repeat radiofrequency ablations for his patient, Ms. Kendrick, were needed and related to the November 30, 2018, motor vehicle accident.

89. State Farm decided that their hired IME physician knows better than Plaintiff's treating physician, Dr. Masri, and once again denied payment of any UIM benefits to Plaintiff.

90. In addition, from April 2019 to July 2020, State Farm paid Plaintiff's first-party medical payment benefit policy limit of $25,000.00 under Plaintiff's State Farm policy for treatment relating to this accident.

91. State Farm did not dispute the treatment made under the Plaintiff's first party medical payment benefit policy limit of Plaintiff's State Farm policy and did not dispute the causation of the injuries necessitating that treatment.

92. Despite having Plaintiff's medical records and bills totaling over $330,000 and having an expert report from Plaintiff's treating physician recommending future treatment and another expert report calculating Plaintiff's future treatment needs at well over $1,000,000, State Farm has refused to pay, or even offer to pay, any UIM benefits to Plaintiff.

93. State Farm has denied Plaintiff's claim despite the value of Plaintiff's injuries, losses, and damages arising from the November 30, 2018, collision being far in excess of the $250,000 payment by the underlying tortfeasor's insurance policy.

94. State Farm's denial of payment was made knowing that Plaintiff only received $250,000 from the underlying tortfeasor who caused the November 30, 2018, collision.

95. Prior to State Farm's denial of this UIM claim, State Farm had not reasonably investigated Plaintiff's UIM claim.

96. State Farm's delay in completing the evaluation of Plaintiff's UIM claim was unreasonable.

97. Upon information and belief, State Farm hired a defense IME expert with the intent to avoid paying Plaintiff's claim.

98. Upon information and belief, rather than reasonably considering the opinions of, and treatment provided by, Plaintiff's own physician, Dr. Masri, State Farm unreasonably hired a defense IME expert with an intent to attack Plaintiff's past and recommended future medical treatment and particularly Plaintiff's past and recommended future radiofrequency ablation procedures that were, and still are, providing her pain relief.

99. State Farm, in evaluating Plaintiff's UIM claim, has placed their own interests above that of their insured by, among other things, placing the opinions of their own defense IME expert over the opinions of Plaintiff's treating physician.

100. As of the time of this Complaint's filing, State Farm has not contested, and has not provided any opinions contesting, that Sophia Rossi was the sole cause of the subject collision of November 30, 2018.

101. As of the time of this Complaint's filing, State Farm has not paid any UIM benefits to Plaintiff under the State Farm Policies in relation to the subject collision of November 30, 2018.

102. As of the time of this Complaint's filing, State Farm has not issued any *Fisher Payments* to Plaintiff in relation to her UIM claim.

103. As of the time of this Complaint's filing, Plaintiff has not been fully compensated for the past and future injuries, damages, and losses she sustained in the subject collision of November 30, 2018.

104. State Farm has placed their interests in limiting their UIM claim payouts and increasing their own profits above the interests of their own insured, Plaintiff, in being fully and fairly compensated for her injuries, losses, and damages arising from the subject collision on November 30, 2018.

105. State Farm's actions, inactions, and conduct described herein constitute a breach of the State Farm Policies.

106. State Farm's actions, inactions, and conduct described herein constitute bad faith insurance claims handling practices.

107. State Farm's actions, inactions and conduct described herein constitute the unreasonable delay and/or denial of the payment of UIM benefits owed to Plaintiff under the State Farm Policies.

108. As a direct and proximate result of State Farm's actions, inactions, conduct and bad faith handling of the subject UIM claim, Plaintiff has suffered injuries, damages, and losses, including, but not limited to, the unreasonable delay and denial of UIM insurance benefits owed to her by State Farm under the State Farm Policies.

### FIRST CLAIM FOR RELIEF—UNINSURED MOTORIST CLAIM/ BREACH OF CONTRACT

109. Plaintiff incorporates by reference the preceding paragraphs of this *Complaint and Jury Demand* as if fully set forth herein.

110. Plaintiff recovered, with State Farm's written consent, $250,000.00 from the driver who caused the subject collision of November 30, 2018.

111. In the subject collision of November 30, 2018, Plaintiff suffered past and future economic damages, past and future non-economic damages, and damages for permanent physical impairment well in excess of the tortfeasor's $250,000.00 liability insurance policy limits.

112. As such, Plaintiff was not fully compensated for her injuries, damages, and losses sustained in the November 30, 2018, collision.

113. Plaintiff is entitled to recover UIM benefits provided through the State Farm Policies.

114. Plaintiff entered into contracts of insurance with State Farm as identified herein, and was otherwise an insured under policies of insurance as identified herein; whereby, State Farm promised to provide UIM coverage to Plaintiff, and promised to pay UIM benefits to Plaintiff, in exchange for the payment of premiums.

115. At the time of the subject collision on November 30, 2018, State Farm insured Plaintiff for UIM benefits through the State Farm Policies.

116. State Farm has breached their contract of insurance providing UIM benefits to Plaintiff by failing to pay UIM benefits owed under the State Farm Policies to Plaintiff.

117. As a direct and proximate result of the negligence of the at-fault driver referenced herein and the damages sustained by Plaintiff in the November 30, 2018, collision, and as a direct result of State Farm's breach of contract, Plaintiff has suffered damages and, as required by C.R.S. § 10-4-609 and the State Farm Policies, State Farm is liable to pay UIM benefits to Plaintiff to compensate her for her injuries, damages, and losses.

### SECOND CLAIM FOR RELIEF—COMMON LAW BAD FAITH BREACH OF INSURANCE CONTRACT

118. Plaintiff incorporates by reference the preceding paragraphs of this *Complaint and Jury Demand* as if fully set forth herein.

119. Plaintiff entered into contracts of insurance with State Farm as identified herein, and was otherwise an insured under policies of insurance as identified herein; whereby, State Farm promised to provide UIM coverage to Plaintiff, and promised to pay UIM benefits to Plaintiff, in exchange for the payment of premiums.

120. At the time of the subject collision on November 30, 2018, State Farm insured Plaintiff for UIM benefits through the State Farm Policies.

121. State Farm acted unreasonably in failing to timely and reasonably pay the UIM benefits owed to Plaintiff arising from the injuries, damages, and losses sustained by Plaintiff in the subject collision on November 30, 2018, and by continuing to delay and deny said payment.

122. State Farm's conduct described herein was unreasonable and in violation of C.R.S. § 10-3-1104(1)(h).

123. State Farm knew that their conduct described herein was unreasonable or recklessly disregarded the fact that their conduct described herein was unreasonable.

124. As a direct and proximate result of State Farm's bad faith conduct, Plaintiff has sustained injuries, damages, and losses, the amounts of which will be proven at trial.

### THIRD CLAIM FOR RELIEF—STATUTORY CLAIM FOR DAMAGES FOR UNREASONABLE DELAY AND DENIAL OF BENEFITS UNDER C.R.S. § 10-3-1115 AND 10-3-1116

125. Plaintiff incorporates by reference the preceding paragraphs of this *Complaint and Jury Demand* as if fully set forth herein.

126. Plaintiff entered into a contract of insurance with State Farm, and was otherwise an insured under policies of insurance as identified herein; whereby, State Farm promised to provide UIM coverage to Plaintiff, and promised to pay UIM benefits to Plaintiff, in exchange for the payment of premiums.

127. At the time of the subject collision on November 30, 2018, State Farm insured Plaintiff for UIM benefits through the State Farm Policies.

128. Pursuant to C.R.S. § 10-3-1115, State Farm cannot unreasonably delay or deny payment of UIM benefits owed under the State Farm Policies to Plaintiff.

129. State Farm violated C.R.S. § 10-3-1115 by delaying and denying payment of UIM benefits owed to Plaintiff under the State Farm Policies for the injuries, damages and losses Plaintiff suffered in the November 30, 2018, collision without a reasonable basis for doing so.

130. State Farm acted unreasonably in their investigation of the November 30, 2018, collision, Plaintiff's associated damages, and Plaintiff's subject UIM claim with State Farm.

131. State Farm has acted unreasonably in their dealings with Plaintiff with regard to her UIM claim.

132. Pursuant to C.R.S. § 10-3-1116, Plaintiff is entitled to recover reasonable attorneys' fees, court costs and two times the covered benefit as a result of State Farm's unreasonable delays and denials in the handling and payment of her UIM claim.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgement, jointly and severally, against Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, and for relief against the Defendants and each of them, as follows:

1. Benefits owed to Plaintiff for a breach of contract under the State Farm Policies affording Plaintiff UIM coverage benefits by the Defendants at the time of the subject collision in an amount to be determined at trial;

2. Damages for common law bad faith including economic and non-economic damages;

3. Statutory damages as provided by C.R.S. § 10-3-1116, including costs, attorneys' fees, and two times the covered benefits;

4. All other compensatory damages caused by State Farm's actions, inactions, conduct, and bad faith insurance dealings;

5. Pre-judgment and post-judgment interest as provided for by law; and

6. For such other and further relief as the Court deems just, reasonable, and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 6th day of August, 2023.

**WHALEN INJURY LAWYERS, LLC**

(Original signature on file at
 Whalen Injury Lawyers, LLC)


By: /s/ Reeves D. Whalen
     Reeves D. Whalen


**Plaintiff's Address:**
740 Sunrise Circle
Woodland Park, CO 80863